OPINION
{¶ 1} The State is appealing from the decision of the Montgomery County Common Pleas Court, Juvenile Division, dismissing, upon motion, a complaint charging the juvenile [J.A.P.] with delinquency for committing negligent homicide. The facts and procedural posture of the case are set forth in the Juvenile Court's entry and order, as follows:
 {¶ 2} "This matter is before the Court pursuant to a Motion to Dismiss filed by [J.A.P.] (hereinafter juvenile), by and through his attorney, on February 13, 2003. On November 15, 2002 the State filed a complaint against the juvenile charging him with negligent homicide. Due to complex issues, the Court ordered both the juvenile and the State to file briefs addressing the issue of whether the State had failed to preserve its right to file additional charges after the Court accepted the juvenile's guilty plea. For the following reasons, this Court hereby GRANTS the Motion to Dismiss.
 {¶ 3} "On December 11, 1999, Jeremy Lattimore sustained a gunshot wound to the neck while at the home of the accused, [J.A.P.]. Consequently, on January 8, 2000, the Prosecuting Attorney's Office of Montgomery County, Juvenile Division filed complaint number JC 2000-0169 charging [J.A.P.] with one count of negligent assault, a misdemeanor of the third degree.
 {¶ 4} "On February 1, 2000 at the Initial Adjudicatory Hearing (IAH), the juvenile entered an admission to the charge of negligent assault as charged by the prosecution. Thereafter, at the Dispositional Hearing on March 1, 2000, Magistrate Gasper placed the juvenile on probation, suspended 29 days at Dora Tate Juvenile Center, ordered the juvenile receive counseling, pay restitution up to $500.00 and write a letter of apology. The prosecution chose not to be present, nor reserved any right to further charge the juvenile in the event that the victim died.
 {¶ 5} "On August 7, 2002, Jeremy Lattimore died from complications arising from the injuries he sustained in December 1999. As a result, complaint number JC 2002-10831 was filed, charging [J.A.P.] with one count of negligent homicide.
 {¶ 6} "The juvenile raises two points in his Motion to Dismiss, however this Court will only address the second: at no time after the prosecution charged the youth with negligent assault, did the prosecution reserve, on the record, any right to bring further charges should the victim die, therefore precluding the prosecution from charging the juvenile with negligent homicide.
 {¶ 7} "The juvenile argues that in light of State v.Carpenter (1993), 68 Ohio St.3d 59, 623 N.E.2d 66, the prosecution should be barred from further prosecution. InCarpenter, the State accepted the defendant's plea in which it agreed to reduce the charge of felonious assault to attempted felonious assault for a stabbing. Id. at 60, 623 N.E.2d at 67. Even though at the time the State entered into the agreement, the victim was in a coma and it was clear that the victim's condition was critical, the plea agreement contained no reference to additional prosecution in the event of the victim's death. Id. Two years later the victim died and the prosecution charged the defendant with murder. Id.
 {¶ 8} "The court in Carpenter held `the State cannot indict the defendant for murder after the court has accepted a negotiated guilty plea to a lesser offense and the victim later dies of injuries sustained in the crime, unless the State expressly reserves the right to file additional charges on the record at the time of the defendant's plea.' 68 Ohio St.3d at 62,623 N.E.2d at 68; Ohio v. Carpenter (1994), 512 U.S. 1236,114 S.Ct., 2741, 129 L.Ed.2d 861, certiiorari denied; State v.Browning (2001), 2001 Ohio App. Lexis 3098 (followingCarpenter).
 {¶ 9} "The facts presented in this case closely resemble those presented to the court in Carpenter. In the case at bar, the police report stated that the victim was in critical condition after the accidental shooting, thus, the prosecution was aware of the seriousness of the victim's injuries at the time the of the [sic] IAH.
 {¶ 10} "In Juvenile Court, the IAH is an essential and necessary part of the administration of justice, as are plea agreements. Initial Adjudicatory Hearings allow the Juvenile Court to adjudicate and dispose of as many cases as possible without the involvement of attorneys. The prosecution is fully aware of the IAH procedures, and is aware that the juvenile could enter an admission to the negligent assault at that time. This Court does not restrict either the public defenders, or the prosecution from attending the IAH. Likewise, this Court has held open its doors, welcomingly to the prosecution at the IAH.
 {¶ 11} "In addition, the prosecution signed the initial complaint charging the juvenile with negligent assault (the lesser included offense), had knowledge of the seriousness of the victim's injuries, had notice of the IAH, yet chose not to appear at the hearing and made no attempt to preserve on the record, it's right to bring further charges should the victim die.
 {¶ 12} "Lastly, this Court is bound by the decisions of the Supreme Court of Ohio; therefore, based upon the decision inCarpenter, unless the State expressly reserved the right to file additional charges, on the record at the time of the defendant's admission, it cannot file additional charges if the victim later dies. Thus, this Court hereby GRANTS the juvenile's Motion to Dismiss."
 {¶ 13} The State's assignment of error is as follows:
 {¶ 14} "The juvenile court's dismissal of the complaint charging [J.A.P.] with delinquency for committing negligent homicide was improper. [J.A.P.] did not admit responsibility to negligent assault as part of a negotiated plea agreement with the state; thus, the state was not required to expressly reserve the right to file additional charges against [J.A.P.]."
 {¶ 15} The State's argument is that the trial court's reliance on State v. Carpenter (1993), 68 Ohio St.3d 59 is misplaced inasmuch as the defendant and Carpenter entered a plea of guilty to a lesser included offense as part of the initiated plea agreement. Here, there was no plea agreement. Appellee, through counsel, concedes on this issue. However, the appellee argues that the purposes of the Juvenile Court system would not be served if the appellant were adjudged once more delinquent albeit on a new charge because of the incident in 1999. Appellee argues that additional reasons for the original delinquency finding would require no enhanced sanctions and would not change that finding. He states that "unlike adult court, the goal is not to convict and subject [J.A.P.] to punishment for a crime but is rather to protect and care for the development of [J.A.P.]. That has been done." Appellee brief, 4.
 {¶ 16} The State responded in its reply brief that we do not know at this time, and cannot know, what disposition the Juvenile Court will make following a hearing on the second charge because the second charge is more serious and involved a taking of a life. The State is undoubtedly correct, and while J.A.P. has been judged delinquent, a second disposition hearing will have to be held by the Juvenile Court on the new charge and a decision as to what disposition will be made by the Juvenile Court of J.A.P., and we cannot assume it will be unchanged from the prior disposition.
 {¶ 17} The assignment of error is sustained. The decision is reversed and the case is remanded for proceedings in accordance with this decision.
Fain, P.J. and Grady, J., concur.